*Formatted for Electronic Distribution*                                          *For Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT



Filed & Entered
On Docket
January 14, 2022

**In re:**

    **Koffee Kup Bakery, Inc.,**                           Involuntary Case # 21-10168
        **Putative Debtor.**                                  Chapter 7

*Appearances:*

| | |
|---|---|
| Alexandra Edelman, Esq., and Ryan Long, Esq. | Andrew Levin, Esq. and David Reier, Esq. |
| Primmer Piper Eggleston & Cramer | Arent Fox LLP |
| Burlington, VT | Boston, MA |
| For the Putative Debtor | For Lily Transportation, Inc. |
| | |
| David Dunn, Esq. | Timothy Netkovick, Esq. |
| Phillips, Dunn, Shriver & Carroll, PC | The Royal Law Firm |
| Brattleboro, VT | Springfield, MA |
| For Linda Joy Sullivan | For Bernardino's Bakery, Inc. |
| | |
| Barbara Ruth Blackman, Esq. | John T. Carroll, Esq. |
| Lynn, Lynn, Blackman & Manitsky, PC | Cozen O'Connor |
| Burlington, VT | Wilmington, DE |
| For Lily Transportation, Inc. (Local Counsel) | For Ryder Truck Rental, Inc. |
| | |
| | Tavian Mayer, Esq. |
| | Mayer & Mayer |
| | South Royalton, VT |
| | For Hillcrest Foods, Inc. |

### <u>MEMORANDUM OF DECISION</u>
### <u>MEMORIALIZING BENCH RULING GRANTING MOTIONS TO DISMISS INVOLUNTARY PETITION</u>

      The Petitioners filed an involuntary chapter 7 case against the Putative Debtor and, in response, the Putative Debtor and the receiver in the Putative Debtor's state court dissolution proceeding each filed a motion to dismiss that petition. At the conclusion of an evidentiary hearing on the petition and motions to dismiss, the Court entered a bench ruling finding the petition to be insufficient and dismissing the case. The Court enters this memorandum of decision to memorialize the findings of fact and conclusions of law it articulated in its bench ruling, and to explain its rationale in greater detail.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered on June 22, 2012. This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A) and (O), over which the Court has authority to enter a final judgment.

## PROCEDURAL HISTORY

Petitioning Creditors Bernardino's Bakery, Inc. ("Bernardino's"), Lily Transportation Corp. ("Lily"), Hillcrest Foods, Inc. ("Hillcrest"), and Ryder Truck Rental, Inc. ("Ryder") (collectively, the "Petitioners"), filed this involuntary chapter 7 case against Koffee Kup Bakery, Inc. (the "Putative Debtor") on August 16, 2021 (doc. # 1).[1]

On August 27, 2021, the State of Vermont, through the Office of Attorney General Thomas J. Donovan, Jr. (the "AGO"), filed a motion for leave to file a memorandum of law, as intervenor or alternatively as amicus curiae, seeking an order permitting the receiver in the state court KeyBank action, Ronald Teplitsky, to pay the Putative Debtor's employees the paid time off ("PTO") they were owed (doc. # 7, the "Motion to Intervene"). On September 7, 2021, the Petitioners filed a response to the Motion to Intervene (doc. # 22) arguing inter alia that §§ 362 and 543 prohibited Mr. Teplitsky from disbursing any funds other than to the duly appointed trustee in this bankruptcy case following entry of the order for relief.[2] The Petitioners did not take a position on the AGO's request to intervene in this case.

Also on September 7, 2021, the Putative Debtor filed a motion to dismiss the involuntary position with a memorandum of law (doc. # 23) seeking dismissal pursuant to §§ 105 and 303, or in the alternative abstention pursuant to § 305, as well as costs, attorneys' fees, and damages pursuant to §303(i), and an order directing the Petitioning Creditors to post a bond pursuant to § 303(e). Linda Joy Sullivan, the receiver in the state court dissolution proceeding, also filed a motion to dismiss the involuntary position with a memorandum of law (doc. # 24) seeking dismissal pursuant to § 303, or in the alternative, abstention under § 305 in the form of dismissal, or suspension of all proceedings in this case pending resolution of the state court actions.

Also on September 7th, Ms. Sullivan filed a response in support of both the Motion to Intervene and the AGO's underlying request that this Court permit Mr. Teplitsky to make the PTO payments (doc. # 25), as did the Putative Debtor (doc. # 26). The Putative Debtor also requested the Court adjudicate its pending motion to dismiss the involuntary petition prior to considering turnover under § 543, asserting the latter issue would be moot if the Court granted dismissal of this case (doc. # 26, p. 2).

---

[1] As the Court observed in its bench ruling, the involuntary petition was filed solely against Koffee Kup Bakery, Inc.; its subsidiaries were listed on the involuntary petition for informational purposes only, and neither Vermont Bread Company nor Superior Bakery are part of this bankruptcy case.
[2] All statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code"), unless otherwise indicated.

2

On September 10, 2021, Ms. Sullivan filed a reply (doc. # 27) requesting the Court grant the Motion to Intervene, permit Mr. Teplitsky to pay the PTO, and excuse both receivers from complying with any § 543 turnover requirements pending a decision on dismissal or abstention. The AGO filed a reply (doc. # 28) joining the motions to dismiss and requesting the Court either dismiss the petition or permit Mr. Teplitsky to pay the PTO. The Putative Debtor likewise filed a reply (doc. # 29) requesting dismissal or abstention.

On September 15, 2021, the Court entered an order (doc. # 30) granting the Motion to Intervene. The Court treated the portion of the AGO's filings requesting this Court permit Mr. Teplitsky to make the PTO payments (and related filings pertaining to the PTO) as a request for a determination by this Court whether the PTO constitutes property of the estate such that the § 362 automatic stay applies and, if so, whether relief from the automatic stay is warranted (the "Automatic Stay Matter"), and set a schedule on resolution of the Automatic Stay Matter and the portion of the Putative Debtor and Ms. Sullivan's filings requesting suspension or abstention with respect to all proceedings in this case under § 305 (the "Suspension/Abstention Matter"). The Court deferred resolution of the request for turnover under § 543 (the "Turnover Matter") and adjudication of the petition and dismissal under §§ 105 and 303 (the "Adjudication/Dismissal Matter") until after resolution of the Automatic Stay and Suspension/Abstention Matters, and deferred a decision on the Putative Debtor's request for sanctions under § 303(i) or the posting of a bond under § 303(e) until after a trial on adjudication of the petition. Finally, the Court determined Mr. Teplitsky and Ms. Sullivan were exempt from the duty to turnover any funds or other alleged property of the estate, pursuant to § 543, until after the Court's resolution of the Turnover Matter.

The Court entered an order on September 17, 2021 (doc. # 35), which it subsequently clarified (doc. # 41), permitting Mr. Teplitsky to pay the PTOs, thus resolving the Automatic Stay Matter. With respect to the Abstention/Suspension Matter, the Court temporarily suspended bankruptcy proceedings to allow Mr. Teplitsky to complete his responsibilities as receiver in the state court KeyBank action, after which the Court would establish a schedule to address the Turnover, Abstention/Suspension, and Adjudication/Dismissal Matters. Mr. Teplitsky was later discharged as receiver in the state court KeyBank action and the Court excused him from further participation in this case (doc. # 79).

On November 1, 2021, the Court entered a stipulated discovery and pre-trial scheduling order (doc. # 62), which set the evidentiary hearing to commence on December 20, 2021. Pursuant to that scheduling order, the Petitioning Creditors filed their opposition to the pending motions to dismiss on November 5, 2021 (doc. # 71), and Ms. Sullivan and the Putative Debtor filed replies on November 12, 2021 (doc. ## 85, 87).

Pursuant to the Court's December 10, 2021 scheduling order (doc. # 98), on December 13, 2021, the parties filed a joint notice of evidentiary hearing (doc. # 100) and the Petitioners filed a memorandum

3

regarding certain discovery issues (doc. # 101). The Court held a final pre-trial conference on December 15, 2021 and issued its final pre-trial scheduling order on December 16, 2021 (doc. # 102). Pursuant to that order, the parties filed a stipulation regarding the remote appearance of certain witnesses (doc. ## 103, 124), which the Court granted (doc. ## 115, 130). The parties also filed a stipulation regarding remote witness oaths (doc. # 125), as well as a stipulation more specifically articulating which aspects of Petitioners' claims the Putative Debtor and Ms. Sullivan alleged were the subject of a bona fide dispute (doc. # 126). Additionally, the parties filed exhibits lists that included a stipulation as to which exhibits they agreed were admissible at trial (doc. ## 106–113, 117, 123).[3]

On December 17, 2021, the Petitioners filed a memorandum of law in support of their argument, which had been raised for the first time in the joint notice of evidentiary hearing, that the Putative Debtor and Ms. Sullivan lacked standing to oppose entry of an order for relief or to file motions to dismiss (doc. # 105). On the same date, the Putative Debtor and Ms. Sullivan each filed a responsive memorandum of law (doc. ## 118, 119), and the Court issued an order rejecting the Petitioners' standing argument and indicating the trial would proceed as scheduled (doc. # 120).

The Court held a two-day trial on December 20 and 21, 2021, at which it heard remote testimony from Eric Bromage on behalf of Lily, Michael Mandell on behalf of Ryder, Carmen Pascuito on behalf of Hillcrest, Sergio Goncalves on behalf of Bernardino's Bakery, and Justin Heller as state court counsel for Mr. Teplitsky, as well as in-person testimony from Ms. Sullivan. The Court admitted all exhibits into evidence at the evidentiary hearing.[4] At the conclusion of the hearing, the Court entered its bench ruling granting the motions to dismiss pursuant to §§ 303(b)(1) and 305(a)(1). After a recess, the parties indicated they had reached a tentative agreement that the Putative Debtor would withdraw its request for sanctions under § 303(i) in exchange for the Petitioners' agreement not to appeal the bench ruling, and the Court directed the parties to file a proposed stipulated order setting out the terms of their settlement agreement.

On December 23, 2021, the parties filed their proposed stipulation (doc. # 143), and the Court entered an order denying the Petitioners' request for an order for relief, granting the Putative Debtor and Ms. Sullivan's motions to dismiss the involuntary petition, and approving the parties' settlement under which the Putative Debtor waived its rights to judgment, claims, and remedies under § 303(i) and the Petitioners waived their rights to appeal or set aside the findings and conclusions in this Court's

---

[3] Lily filed an emergency motion seeking to redact an exhibit that had been inadvertently filed in unredacted form and which was subject to a protective order (doc. # 114), which the Court granted (doc. # 116); Lily subsequently filed the redacted exhibit (doc. # 117).

[4] The Petitioners objected to admission of the Putative Debtor's Exhibit 60, which purported to be a demonstrative timeline of communications summarizing email exhibits (doc. ## 109, 109-1). The Court has not relied on that exhibit in its bench ruling or in this decision.

4

December 21, 2021 bench ruling (doc. # 144).[5]

## ISSUES PRESENTED

The filings and disputes in this case presented multiple, interrelated issues. First, the Court needed to adjudicate the Petitioners' request challenging the Putative Debtor and Ms. Sullivan's standing to either oppose the involuntary petition or move to dismiss the case. Second, having rejected the Petitioners' standing challenge, the Court turned to the central question of whether to grant the Petitioners' request for the entry of an order for relief or to grant the Putative Debtor and Ms. Sullivan's motions to dismiss this involuntary petition.[6] The Court would have next addressed the sanctions question, had the parties not reached a settlement of that issue.

## DISCUSSION

As a threshold matter, the Petitioners argued the Putative Debtor and Ms. Sullivan lacked standing to oppose entry of the order for relief (doc. # 105). The Putative Debtor and Ms. Sullivan asked the Court to reject the Petitioners' standing challenge (doc. ## 118, 119).

The Second Circuit recently observed:

> Article III standing requires plaintiffs to show (1) an injury in fact, (2) a causal connection between that injury and the conduct at issue, and (3) a likelihood that the injury will be redressed by a favorable decision … To demonstrate injury in fact, a plaintiff must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical.

Maddox v. Bank of N.Y. Mellon Tr. Co., N.A., 2021 U.S. App. LEXIS 34056, *8–9 (2d Cir. Nov. 17, 2021) (internal quotation marks and citations omitted).

With respect to "whatever purports to be the Koffee Kup Bakery, Inc." – in other words, the Putative Debtor in this case – the Petitioners asserted that entity has suffered no injury in fact because it sought and obtained dissolution by state court order, and further that redressability was not possible because the Putative Debtor "chose to cease its existence." (doc. # 105, pp. 1–2). The Putative Debtor responded that it continued to have a legal existence under Vermont state law, as its state court dissolution proceeding was still pending and had been stayed due to the Petitioners' involuntary bankruptcy petition, and even after dissolution its existence continues until its affairs are wound up.

As to Ms. Sullivan, the Petitioners asserted that her authority as receiver was limited to representing the interests of the surplus assets at issue in the state court dissolution proceeding for the benefit of creditors and, since she was not a creditor and had no claim to the Putative Debtor's assets, she had suffered no injury in fact. The Petitioners analogized to All. United Inc. Corp. v. Krasnoff (In re

---

[5] In light of that stipulated order, there is no need for the Court to enter any further order effectuating this memorandum of decision.

[6] Based on the Court's bench ruling and the parties' subsequent stipulation, there is no need for the Court to address the Petitioners' request for turnover under § 543 or the Putative Debtor's request for sanctions under § 303(i) and the posting of a bond under § 303(e).

5

Venegas), 623 B.R. 555 (B.A.P. 9th Cir. 2020), in which the court found the putative debtor's insurance carrier lacked standing to file a motion to dismiss the debtor's involuntary chapter 7 case. In support of their position that Ms. Sullivan was acting ultra vires, the Petitioners attached a copy of the joint order appointing her as receiver in the state court dissolution proceeding (doc. # 105-1). Ms. Sullivan responded that the order appointing her as receiver does not restrict her participation in the instant bankruptcy case, and further argued that Venegas was inapposite and numerous courts have permitted state court appointed receivers to file motions to dismiss involuntary petitions.

As the Court stated in its December 17, 2021 order (doc. # 120), the Court found Petitioners' standing challenge to be without merit for the reasons the Putative Debtor and Ms. Sullivan articulated. Turning first to the Putative Debtor, under Vermont law, "[i]f after a hearing the court determines that one or more grounds for judicial dissolution … exist, it may enter a decree dissolving the corporation and specifying the effective date of the dissolution." 11A V.S.A. § 14.33(a). Here, there was nothing in the record indicating the state court had entered a decree dissolving the Putative Debtor. On the contrary, the copy of the state court docket filed in this case showed the Putative Debtor's dissolution proceeding had been stayed prior to the entry of a dissolution decree (see doc. # 31-1). Further, even had the Putative Debtor been dissolved pre-petition, a dissolved entity may have a continued legal existence sufficient to grant Article III standing. See Fund Liquidation Holdings LLC v. Bank of Am. Corp., 991 F.3d 370, 383 (2d Cir. 2021) ("state law granted the dissolved entities continued existence even after dissolution so that they could wind up their affairs, which included seeking liquidation under the bankruptcy code") (citing Cedar Tide Corp. v. Chandler's Cove Inn, Ltd. (In re Cedar Tide Corp.), 859 F.2d 1127, 1131–32 (2d Cir. 1988)) (additional citation omitted); see also 11A V.S.A. § 14.05(a) ("[a] dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs"). The Petitioners' filing of the involuntary petition was itself a tacit admission of the Putative Debtor's continued legal existence. Cf. 11A V.S.A. § 14.05(b) ("[d]issolution of a corporation does not … prevent commencement of a proceeding by or against the corporation in its corporate name").

Turning to Ms. Sullivan, the order appointing her as receiver in the state court dissolution action granted her broad authority to oversee dissolution of the Putative Debtor – she was "authorized, in the exercise of her discretion, and subject to oversight and control of [the state court and 11A V.S.A. §§ 14.01 et seq.], to do any and all acts necessary for the proper and lawful conduct of the receivership in accordance with [11A V.S.A. §§ 14.01 et seq.]" (doc. # 105-1, p. 4, ¶ 3) (emphasis added). Moreover, the state court order specifically directed that she "shall take any and all actions she deems reasonable and appropriate to prevent waste of the [remaining assets of the Putative Debtor] and to preserve, secure, manage, maintain, and safeguard" those assets (doc. # 105-1, p. 7, ¶ 3(e)) (emphasis added). The

6

Petitioners had not pointed to, and this Court was not aware of, any state court order or provision in 11A V.SA. §§ 14.01 et seq. prohibiting Mr. Sullivan from responding to the Petitioners' involuntary petition in her capacity as dissolution receiver. Further, many courts have permitted state court appointed receivers to file motions to dismiss involuntary petitions. See, e.g., In re Skybridge Spectrum Found., 2021 Bankr. LEXIS 1534, 2021 WL 2326595 (Bankr. D.C. June 3, 2021); In re Webster Hospitality Dev., LLC, 2009 Bankr. LEXIS 2449, 2009 WL 2762692 (Bankr. W.D.N.Y. Aug. 27, 2009). Finally, the Court agrees with Ms. Sullivan that Venegas is inapposite, as that case did not involve a receiver or other similarly situated movant.

Having rejected the Petitioners' challenge to the Putative Debtor and Ms. Sullivan's standing to oppose entry of an order for relief or file their motions to dismiss, the Court turns next to the central question posited by this case – whether to grant the Petitioners' request for the entry of an order for relief or, instead, to grant the Putative Debtor and Ms. Sullivan's motions to dismiss this involuntary petition. While the parties raised several arguments regarding dismissal that the Court will ultimately address, as it did in its bench ruling, it turns first to its dispositive determination in this case, namely whether Lily and Ryder's claims are the subject of a bona fide dispute as to amount or liability, as that term is used in § 303(b)(1).

The parties stipulated that the claims of two of the Petitioners – Bernardino's and Hillcrest – were not subject to bona fide dispute as to liability or amount (doc. # 126, p.1, ¶¶ 1, 3). The claims of the remaining two Petitioners are more complicated and were the subject of most of the argument and evidence presented at the trial. With respect to Lily and Ryder, the parties stipulated that:

> … the amount of $660,705.61 set forth on the Lily invoices and as summarized on [Petitioners'] Exhibit 54 is not subject to bona fide dispute as to liability or amount as that amount sets forth the principal amount claimed on the invoices.
>
> … the portion of Ryder's claim in the amount of $477,429.04, which represents the portion of its total asserted claim that is attributable to unpaid invoices for goods and services provided by Ryder as referenced and summarized on [Petitioners'] Exhibit 84, is not subject to bona fide dispute as to liability or amount as that amount sets forth the principal amount claimed on the invoices.

(doc. # 126, pp. 1–2, ¶¶ 2, 4). The gravamen of the Putative Debtor and Ms. Sullivan's argument was that there is a bona fide dispute as to: (1) Lily's reservation of the right to increase the amount of its claim based on an allegation of wrongful contract termination, and any corresponding increase in its claim against the Putative Debtor; and (2) the amount of Ryder's breach of contract damages arising from the Schedule A(s) between Ryder and the Putative Debtor, as governed by their Truck Lease and Service Agreement.

The controlling section of the Bankruptcy Code provides, in relevant part:
(b) An involuntary case against a person is commenced by the filing with the

7

bankruptcy court of a petition under chapter 7 … of this title—

> (1) by three or more entities, each of which is … a holder of a claim against such person that is not … the subject of a bona fide dispute as to liability or amount … if such noncontingent, undisputed claims aggregate at least $16,750 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims[.]

11 U.S.C. § 303(b)(1). Since § 303(b)(1) requires at least three such petitioning creditors, the involuntary petition would have been insufficient if the Court found both Lily and Ryder's claims to be the subject of a bona fide dispute as to liability or amount.

The Second Circuit "appl[ies] an objective test in determining whether a bona fide dispute exists. A court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt." Crest One SpA v. TPG Troy, LLC (In re TPG Troy, LLC), 793 F.3d 228, 234 (2d Cir. 2015) (internal quotation marks and citations omitted). Since 2005, when Congress inserted the phrase "as to liability or amount" in § 303(b)(1), "courts have been evenly split on whether 'a dispute as to any portion of a claim, even if some dollar amount would be left undisputed, means there is a bona fide dispute as to the amount of the claim.'" State Dep't of Revenue v. Blixseth, 942 F.3d 1185 (9th Cir. 2019) (citing Fustolo v. 50 Thomas Patton Drive, LLC, 816 F.3d 1, 9 (1st Cir. 2016)). Some courts, as well as the Collier bankruptcy treatise, take the position that the undisputed and non-contingent portion of the claim may be used to meet the criteria for an involuntary petition, notwithstanding the existence of a bona fide dispute as to a portion of that claim. See Collier on Bankruptcy ¶ 303.11[2] (16th ed. 2021).

However, the only three circuits courts that have decided the issue – the First, Fifth, and Ninth Circuits – have each taken the opposite position. They have all concluded that a creditor whose claim is the subject of a bona fide dispute as to liability or amount lacks standing to be a petitioning creditor under § 303(b)(1), even if a portion of their claim amount is undisputed and that undisputed amount is sufficient to meet the claims amount threshold. Blixseth, 942 F.3d at 1186; Fustolo, 816 F.3d at 10; Credit Union Liquidity Servs., L.L.C. v. Green Hills Dev. Co., L.L.C. (In re Green Hills Dev. Co., L.L.C.), 741 F.3d 651, 660 (5th Cir. 2014).

Moreover, most of the bankruptcy courts within the Second Circuit that have addressed the issue have reached the same conclusion as the circuit courts. In an early post-BAPCPA case, In re Mt. Dairies, Inc., 372 B.R. 623 (Bankr. S.D.N.Y. 2007) (Morris, J.), the petitioning creditor's claim was based upon an alleged breach of contract. Id. at 626. The court observed that the amounts asserted in the petition included not only amounts disputed by the putative debtor, but also amounts payable to a separate creditor entity and due from a corporate entity other than the debtor. Id. at 633. While the creditor was willing to make post-petition corrections in its initial claim to prove that at least some amount above the §303(b)(1) threshold were not in dispute, the court found those concessions were inadequate to eliminate the bona

8

fide dispute, and in fact raised serious concerns over the legitimacy of the creditor's claim. Id. at 634.

In another earlier case, In re Euro-American Lodging Corp., 357 B.R. 700 (Bankr. S.D.N.Y. 2007) (Bernstein, J.), the court observed that the BAPCPA amendment, which had gone into effect approximately a year earlier, meant that "any dispute regarding the amount that arises from the same transaction and is directly related to the underlying claim should render the claim subject to a bona fide dispute." Id. at 712 n.8. Cf. In re Taub, 439 B.R. 261, 275 n.3 (Bankr. E.D.N.Y. 2010) (Craig, J.) (setting out the competing views of § 303(b)(1) and quoting Euro-American Lodging before concluding the creditor was ineligible under either interpretation of the statute).

Most recently, in In re Manolo Blahnik USA, Ltd., 619 B.R. 81 (Bankr. S.D.N.Y. 2020) (Glenn, J.), the petitioning creditor's claims arose from two unpaid invoices arising from two separate purchase orders for shoes. Id. at 86–87. The bankruptcy court did not need to decide whether a dispute as to the amount of a single claim disqualified the creditor from being a petitioning creditor because the court held the two claims were based on two separate transactions, one that was disputed and one that was not, and the creditor was able to rely on its undisputed claim. Id. at 97–98. The court determined that "if the petitioning creditor and the alleged debtor have engaged in multiple transactions, a petitioning creditor may be permitted to rely on an undisputed claim where it arises from a separate transaction between the same parties." Id. at 92 (citing Fustolo, 816 F.3d at 11) (emphasis added). In reaching its determination, the court observed that its decision did not conflict with Mt. Dairies and Euro-American Lodging, as "[t]hose cases did not involve a claim that could be severed because the disputed and undisputed portions of the claim arose from separate transactions." Id. at 98.

This Court is aware of one bankruptcy court within the Second Circuit that has reached the opposite conclusion. In In re EM Equip., LLC, 504 B.R. 8 (Bankr. D. Conn. 2013) (Rosenthal, J.), the court concluded that "a bona fide dispute as to amount is only relevant if it reduces the amount not in dispute below § 303(b)'s statutory threshold." Id. at 18 (citation omitted). However, that decision was rendered without the benefit of the First, Fifth, and Ninth Circuit cases, which were all decided after 2013, and by a visiting judge from a bankruptcy court within the First Circuit. Accordingly, this Court gives that case less weight.

This Court finds the decisions of the Circuit Courts and its sister court in Manolo Blahnik to be pertinent and persuasive authority. It adopts their rationale. Those decisions convince this Court that the question of whether Lily and Ryder were eligible creditors to file the instant involuntary petition turns on whether a portion of each claim is the subject of a bona fide dispute as to amount or liability and, crucially, if so, whether the disputed and undisputed portions of each claim arise from separate transactions.

In the involuntary petition, Lily asserts a $660,705.61 claim for trucking services, footnoted with

9

an asterisk that reads, "[e]xcluding claim for wrongful contract termination, which claim is expressly reserved." (doc. # 108-17, p. 3). At trial, the Putative Debtor and Ms. Sullivan argued that the reserved portion of Lily's claim was subject to a bona fide dispute as to amount, as Lily had not even computed the amount of that portion of their claim amount or disclosed the amount to any of the parties who testified. The only evidence presented at trial on this amount was Mr. Bromage's testimony that Lily had calculated the damages to be roughly around – or in excess of – $3 million.

Lily did not contest the Putative Debtor and Ms. Sullivan's characterization of the breach of contract damages as disputed. Rather, it asserted the undisputed portion of its claim was sufficient to meet the eligibility threshold under § 303(b)(1) and should thus be allowed. However, as discussed above, this approach does not account for the BAPCPA amendment and is contrary to the First, Fifth, and Ninth Circuit decisions, and most of the bankruptcy court decisions within the Second Circuit.

What is determinative here is whether the $660,705.61 portion of Lily's claim for unpaid invoices and the disputed portion of Lily's claim for breach of contract damages stem from a single transaction. Mr. Bromage testified at trial that both claim components stem from the Dedicated Contract Carriage Transportation Agreement between Lily and the Putative Debtor, and further testified that it was the sole contract between those parties (see doc. ## 135–41 (trial audio recordings); see also doc. # 110-15 (agreement)). Since both the disputed and undisputed portions of Lily's claim are pursuant to the parties' single contract, and since there is a bona fide dispute as to the amount of the damages claimed for wrongful contract termination, the Court finds that Lily's claim is subject to a bona fide dispute as to amount and thus does not meet the eligibility criteria of § 303(b)(1).

Ryder's position is different from Lily's. Ryder contended that it had two separate and distinct claim components: first, a claim for $477,429.04 for unpaid invoices for goods and services and, second, a claim for $1,759,499.23 arising from the Putative Debtor's Schedule A obligation to purchase vehicles upon contract termination (doc. # 111-19). The aggregate amount of those two components ($2,236,928.27) is essentially identical to the amount of Ryder's claim on the involuntary petition (doc. # 108-17, p. 3). At the evidentiary hearing, the Putative Debtor and Ms. Sullivan argued that the second component of Ryder's claim was subject to a bona fide dispute as to amount, based on a dispute as to valuation of the vehicle under the terms of the Schedule A(s) and underlying Truck Lease & Service Agreement between Ryder and the Putative Debtor (the "TLSA") (see doc. # 113-2 (Schedule A); see also doc. # 113-3 (TLSA)). Since the Schedule A damages and unpaid invoices stem from the same transaction, namely the TLSA, and since the Schedule A damages were disputed, the Putative Debtor and Ms. Sullivan asserted that Ryder did not satisfy the eligibility criteria of § 303(b)(1).

Ryder did not contest the Putative Debtor and Ms. Sullivan's characterization of the Schedule A damages as disputed. Rather, it argued that each Schedule A was a "separate and independent lease

10

agreement" and thus a separate transaction (doc. # 113-2, ¶ 4 (Vehicle Lease)). Ryder contended that (i) the unpaid invoices for goods and services were undisputed, (ii) those invoices represented a separate transaction from the Schedule A damages, and (iii) therefore Ryder's claim satisfied the "no bona fide dispute" requirement of § 303(b)(1).

As this Court determined in its bench ruling, the salient inquiry here is whether Ryder's two claims arise from a single transaction or separate transactions. Based on the record before it, the Court agreed with the Putative Debtor and Ms. Sullivan that both the unpaid invoices and the Schedule A damages stemmed from the TLSA and, hence, constituted a single transaction between the Putative Debtor and Ryder. The documents admitted at trial make that clear. Section 1(b) of the TLSA provides:

> The Schedule A(s) contain information regarding the Vehicles selected by you pursuant to this Agreement. When you sign a Schedule A, you authorize Ryder to obtain the Vehicles listed on that Schedule A and agree to take delivery to them.

(doc. # 113-3, p. 1, § 1(B)). The term "Vehicle" is defined in § 1 of Schedule A, which provides, in relevant part:

> Each of the vehicles … listed in Appendix 1 … to this Schedule A shall be a Vehicle (as that term is defined in the TLSA…). Each Vehicle and Appendix <u>are expressly incorporated into this Schedule A and the TLSA</u>.

(doc. # 113-2, p. 1, § 1) (emphasis added). Section 4 of Schedule A provides, in pertinent part:

> The lease of each Vehicle listed on this Schedule A shall constitute a separate and independent lease agreement <u>subject to the terms and conditions contained in: (i) the TLSA</u>; (ii) any amendments to the TLSA; (iii) this Schedule A; and (iv) any other written agreement between Ryder and you regarding the Vehicle ….

(doc. # 113-2, p. 1, § 4) (emphasis added).

By its own terms, the above contractual language indicates that Schedule A is subject to the terms of the TLSA and each Vehicle is incorporated into the TLSA. It is undisputed that the $477,429 portion of Ryder's claim for unpaid invoices also arises under the TLSA (<u>see</u> doc. # 111-20) (email from counsel for Ryder to counsel for the Putative Debtor stating that "Ryder … is owed $477,429.04 on regular invoices under the attached [TLSA]"). Therefore, the Court finds Ryder's claim is subject to a bona fide dispute as to amount and does not meet the eligibility criteria of § 303(b)(1).

In sum, as it determined in the December 21, 2021 bench ruling, with respect to eligibility as a petitioning creditor, the Court finds neither Lily nor Ryder holds a claim that meets the § 303(b)(1) requirements. Thus, the Court concludes the Petitioners have failed to demonstrate the requisite number of eligible creditors (<u>i.e.</u>, those holding claims not subject to a bona fide dispute as to amount or liability) have signed the petition, as required by § 303(b)(1). This warrants dismissal of the involuntary petition.

Additionally, the Court reaches the same conclusion on abstention grounds. The record demonstrates the interests of the Putative Debtor and its creditors would be better served by having this

case returned to the state court. The crucial factors weighing in favor of this outcome are: (i) the foreclosure and sale of substantially all of the Putative Debtor's assets occurred pursuant to the orders of the Vermont Superior Court, through the KeyBank receiver; (ii) that same court appointed a dissolution receiver to conduct a claims process with respect to the assets and claims of the three distinct, but related Koffee Kup entities; and (iii) that same judge, the Honorable Samuel Hoar, Jr., would be presiding over the Putative Debtor's dissolution and claims process if this case were dismissed (see doc. # 108-10 (Judge Hoar order appointing dissolution receiver); see also doc. # 110-1 (KeyBank receiver final report on sale of substantially all assets of the Putative Debtor and related entities)). Thus, dismissal is also appropriate under § 305(a)(1).

On these two bases, Court finds the Putative Debtor and Ms. Sullivan met their burden to establish grounds compelling dismissal of the involuntary petition.

The parties raised other issues at trial, including the Putative Debtor and Ms. Sullivan's allegations of bad faith by the Petitioners, and the Petitioners' allegation that Ms. Sullivan lacks the necessary impartiality to fairly disburse proceeds in the state court dissolution proceedings. However, the parties failed to meet their respective burdens of proof on these remaining issues, and the Court need not decide them in light of its ruling herein. To the extent they present justiciable issues the KKB receiver or KKB's creditors need resolved, they are more appropriately addressed in state court.

## CONCLUSION

As the Court concluded in its December 21, 2021 bench ruling, and based on the foregoing analysis and findings, the Putative Debtor and Ms. Sullivan's motions to dismiss this case are granted pursuant to both § 303(b)(1) and § 305(a)(1).

This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

January 14, 2022  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge